FILED
2012 Jul-03 PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **SHEILA DENISE FULTZ,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-2707-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Sheila Denise Fultz ("Ms. Fultz") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Ms. Fultz timely pursued and exhausted her administrative remedies available before

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Fultz was a 32-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on December 2, 2009.  (Tr. 31, 26).  In terms of education, Ms. Fultz completed the ninth grade. (Tr. 31).  She did not obtain a GED.  (*Id.*).

Ms. Fultz's prior work experience includes "multiple jobs as a cashier/checker." (Tr. 42).  Ms. Fultz also has been a fast food worker and an office clerk.  (*Id.*).

Ms. Fultz protectively applied for DIB and SSI on May 9, 2007.  (Tr. 14, 46, 47).  Ms. Fultz maintains that she became disabled on January 12, 2007, due to a herniated disc and obesity. (Tr. 14, 46, 47).  Her claims were denied initially on July 19, 2007.  (Tr. 14, 46, 47).

Ms. Fultz timely filed a request for a hearing that was received by the Social Security Administration on August 20, 2007. (Tr. 14, 60).  A video hearing was held on December 2, 2009, in which Ms. Fultz appeared in Gadsden, Alabama, and the

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

ALJ presided from Memphis, Tennessee. (Tr. 14, 26).

On January 11, 2010, the ALJ concluded Ms. Fultz was not disabled as defined by the Act and denied her DIB and SSI applications. (Tr. 14-22). On January 22, 2010, Ms. Fultz submitted a request for review of the ALJ's decision. (Tr. 9-10). On May 26, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Ms. Fultz becoming the final decision of the Commissioner. (Tr. 1).

On July 28, 2011, Ms. Fultz initiated her lawsuit with this court asking for a review of the ALJ's decision. (Doc. 1). On January 22, 2012, Ms. Fultz filed a brief (Doc. 12) in support of her appeal, and on February 21, 2012, the Commissioner answered with his responsive brief. (Doc. 14). Ms. Fultz elected not to file a reply brief. This court has carefully considered the record, and for the reasons stated below, affirms the Commissioner's denial of benefits, and remands the case for further development and consideration.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations

promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
    (4)    whether the claimant can perform her past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through June 21, 2012.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Fultz had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, January 12, 2007. (Tr. 16 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: herniated disc L5-S1 status post microdiskectomony, obesity, and carpal tunnel release on the left[.]" (Tr. 16 ¶ 3). Accordingly, the ALJ concluded that Ms. Fultz satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Ms. Fultz did not have an impairment

or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16 ¶ 4).  Ms. Fultz does not challenge this determination on appeal.

    Regarding Ms. Fultz's residual functional capacity ("RFC"), the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . except she requires a sit/stand option at will, should avoid overhead reaching, and should no more than frequently perform work activity requiring fingering and handling.  She is also limited to simple instructions at the unskilled task level due to the severity of her physical symptoms.

(Tr. 17 ¶ 5).[4]

    In support of his RFC determination, the ALJ relied upon the physical capacity evaluation performed on Ms. Fultz on June 22, 2009, by her treating physician, Dr. Toumah M. Sahawneh ("Dr. Sahawneh").  (Tr. 19; *see also* Tr. 20, 225 ).  However, the ALJ rejected that portion of Dr. Sahawneh's opinion which suggested that Ms.

---

[4] The Regulations define sedentary work as:

> (a)  Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(b) (current through June 21, 2012).

7

Fultz's "medication . . . might cause sedation and other side effects severe enough to prevent her from performing her job." (Tr. 19; *see also* Tr. 20, Tr. 339-343).

Against this backdrop, the ALJ concluded that Ms. Fultz's impairments prevented her from performing past relevant employment. (Tr. 20 ¶ 6). Because of the ALJ's finding that Ms. Fultz was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 29-30).

Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Ms. Fultz was capable of performing certain sedentary jobs which "exist in significant numbers in the national economy." (Tr. 21). Examples of such possible sedentary positions included employment as a clerical-order clerk, a machine monitor, and a table worker. (*Id.*).

Accordingly, the ALJ concluded that Ms. Fultz was not disabled as defined by the Act, and denied both her DIB and SSI claims. (Tr. 21-22; *see also* Tr. 21 ¶ 11).

## ANALYSIS

In this appeal, Ms. Fultz raises two issues: (1) "Whether the ALJ failed to properly articulate good cause for according less weight to the opinion of the Plaintiff's treating physician[;]" (Doc. 12 at 6) and (2) "Whether the ALJ failed to properly evaluate the credibility of the Plaintiff's testimony consistent with the

Eleventh Circuit Pain Standard." (*Id.* at 9). As discussed below, the court finds no reversible error in either one of these areas.

**I.     The ALJ followed the treating physician's rule.**

In *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the Eleventh Circuit summarized the framework for an ALJ's evaluation of medical opinions:

> In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (per curiam).

*Sharfarz*, 825 F.2d at 279-80 (emphasis added). Good cause for rejecting a treating physician's opinion exists when the evidence does not bolster it or supports a contrary finding. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Additionally, good cause is met when the treating physician's opinion is conclusory or inconsistent with that doctor's own medical records. *Id.*

Here, the ALJ accepted Dr. Sahawneh's conclusions about Ms. Fultz's

exertional abilities as substantiated by the physical capacities evaluation conducted on her, but gave less weight to his opinion about the side effects of medication potentially having a negative impact on Ms. Fultz's ability to work. (Tr. 20; *see also* Tr. 343 (indicating that Ms. Fultz's "having to take . . . meds, may cause sedation and other side effects severe enough to prevent her from pursuing her job.")).

In discounting this particular opinion, the ALJ reasoned:

> The medical source statement by Dr. Sah[a]wneh notes side effects of medication may cause sedation, but there is no reference in treatment notes to such problems, thus, the undersigned gives less weight to such a statement.

(Tr. 20). The court has studied Dr. Sahawneh's treatment records and agrees with the ALJ that they do not disclose complaints by Ms. Fultz about any severe side effects from her medications. (Tr. 302-17, 319-26, 328-29, 346-75, 456-65).

As the Eleventh Circuit has explained regarding side effects as a disabling factor:

> Ms. Swindle also argues that the many medications she is taking have severe side effects that the ALJ failed to take into consideration. <u>However, the ALJ noted that Ms. Swindle did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her</u>. The ALJ's determination that side effects from medication did not present a significant problem is therefore supported by substantial evidence.

*Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (emphasis added). Although

*Swindle* addresses discrediting a claimant's subjective complaints about medicinal side effects, the court finds its reasoning persuasive in finding that the ALJ articulated good cause for rejecting Ms. Fultz's treating doctor's opinion.

Additionally, the court finds that good cause supports the ALJ's discounting of Dr. Sahawneh's side effects opinion because of its inherently speculative nature. More specifically, Dr. Sahawneh merely indefinitely suggests that Ms. Fultz's medication "<u>may</u> cause sedation and other side effects severe enough to prevent her from pursuing her job." (Tr. 343 (emphasis added)). Thus, this lack of medical certainty, coupled with the absence of reported actual severe side effects, sufficiently establishes good cause for the ALJ's assignment of less weight to this particular portion of Dr. Sahawneh's medical source statement.

**II.     The ALJ appropriately applied the Eleventh Circuit pain standard.**

Ms. Fultz also maintains that the ALJ committed reversible error in his application of the Eleventh Circuit pain standard. The court disagrees.

In *Dyer v. Barnhart*, the Eleventh Circuit summarized the legal framework for evaluating pain and other subjective disabling symptoms:

> In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir.1991), this Court articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, as Dyer did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*, 67 F.3d at 1561-62. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Foote*, 67 F.3d at 1561 (quoting *Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir.1987)).

*Dyer*, 395 F.3d at 1210-11.

In this instance, the ALJ has adequately articulated why he only partially credited Ms. Fultz's subjective disabling symptoms. For example (and as discussed above), the ALJ explained why he did not believe that the side effects of Ms. Fultz's medications prevented her from performing all sedentary positions: "[T]he reports of doctor office visits do not show that the claimant has alleged significant adverse side-effects from medications to treating physicians." (Tr. 19).

Moreover, in pursuing her appeal, Ms. Fultz does not contest this observation

12

made by the ALJ by referring the court to contrary medical evidence contained in the record. Therefore, in accordance with *Swindle*, such reasoning is sufficient to discredit the disabling degree of Ms. Fultz's subjective complaints.

As a further illustration, the ALJ pointed out that the infrequency of Ms. Fultz's follow-up treatment after having surgery on February 22, 2008, was inconsistent with the level of continuing limitations that she attributed to her carpal tunnel condition. (Tr. 18-19). Thus, the ALJ appropriately applied the Eleventh Circuit pain standard and provided good cause for finding "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 3rd day of July, 2012.

                                                **VIRGINIA EMERSON HOPKINS**
                                                United States District Judge